**SO ORDERED.**
**SIGNED this 13 day of June, 2017.**



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| LEATRICE ANTOKYO STRONGS | 16-05605-5-JNC |
| | CHAPTER 7 |
| DEBTOR | |

## ORDER DISMISSING CHAPTER 7 CASE

The matters before the court are the Motion to Dismiss filed on April 13, 2017 by the chapter 7 trustee (D.E. 35; the "Trustee Motion") and the Motion to Dismiss or, in the Alternative, Second Motion to Extend Time to Object to Discharge and Dischargeability filed by Bio-Medical Applications of North Carolina, Inc. ("Bio-Med") on April 17, 2017 (D.E. 36; the "Bio-Med Motion") (collectively, the "Motions"). Objections to the Trustee Motion and Bio-Med Motion were filed by the Debtor on April 26, 2017 (D.E. 39 and D.E. 40; collectively, the "Objections"). A hearing on all pending matters was held on May 18, 2017 in Raleigh, North Carolina. At the hearing, the court heard evidence including testimony by the Debtor under oath. At the conclusion of the hearing, the court granted the Trustee Motion and dismissed the case. This order memorializes the court's basis for its decision.

## JURISDICTION

This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction over all matters presented pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## BACKGROUND

The First Case

Leatrice A. Strongs ("Ms. Strongs" or the "Debtor") filed her first petition for relief before this court under chapter 13 of the Bankruptcy Code on November, 12, 2015 (Case No. 15-06172-5-JNC; the "First Case"). Prior to the filing of that petition, Bio-Med commenced a civil action against the Ms. Strongs in the Superior Court of Wake County (the "State Court Action") based on her alleged breach of contract, conversion and retention of reimbursement checks belonging to Bio-Med totaling $88,767.76. The reimbursement checks were issued by the Debtor's health insurance company between 2012 and 2014, and ostensibly were to be immediately turned over by her to Bio-Med in payment of medical services rendered pursuant to a signed payment agreement and assignment of benefits executed between them. In the State Court Action, Bio-Med further alleged that the Debtor converted its funds in a fraudulent manner, using part of the money to purchase two high-end vehicles consisting of a 2007 BMW 750LI Sedan and a 2005 Chevrolet Corvette (the "Vehicles") that she allegedly transferred to a family member for no consideration.

Ms. Strongs did not timely contest the State Court Action. An amended default judgment and order granting constructive trust was entered by the Superior Court of Wake County on February 16, 2015.  Collection efforts by Bio-Med followed, leading to the filing of the First Case. Bio-Med filed a proof of claim in the First Case on March 21, 2016 (Claim No. 9-1) in the amount

of $88,767.76 (the "Bio-Med Debt"). The Debtor failed to list the State Court Action and her ownership or transfer of the Vehicles in the schedules of assets (the "Schedules") or statement of financial affairs ("SOFA") filed with her petition in the First Case.

On November 12, 2015, a standard Notice of Chapter 13 Case, Meeting of Creditors & Deadlines was issued in the First Case informing the Debtor of relevant case duties, dates and deadlines (D.E. 4; the "Notice"). The Debtor and all other interested parties were accordingly informed that the first meeting of creditors required under 11 U.S.C. § 341 was set for December 21, 2015 in Fayetteville, North Carolina. The Debtor filed a Motion to Continue the first scheduled Section 341 meeting of creditors on December 9, 2015, stating that she had a medical appointment scheduled for the same date (D.E. 12). The court granted the first Motion to Continue and reset the Section 341 meeting to January 20, 2016 in Fayetteville, North Carolina (D.E. 13).

The Debtor did not appear when her case was called on January 20, 2016. She filed a Second Motion to Continue (D.E. 20) the reset Section 341 meeting on January 25, 2016, explaining that while she initially was at the meeting location on January 20, 2016, she became ill and left the location before her case was reached. The court granted the second continuance request on February 5, 2016, and set the Section 341 meeting again for March 11, 2016 in Fayetteville, North Carolina (D.E. 27). The day before that meeting (March 10), the Debtor filed a Third Motion to Continue the Section 341 meeting (D.E. 34), asserting that she was hospitalized and would be not be able to attend the third reset creditors meeting. The court granted the third request on March 22, 2016, and yet another Section 341 meeting was scheduled and noticed for April 27, 2016 in Fayetteville, North Carolina (D.E. 36). On April 26, 2017, the Debtor filed a Fourth Motion to Continue (D.E. 46), which request was granted by an order dated May 9, 2016. A fifth Section 341 meeting for June 24, 2016 in Fayetteville, North Carolina. In total, the Debtor continued her

3

Section 341 meeting of creditors four times, causing it to be scheduled for five separate occasions. More than seven months passed in the interim with virtually no case progress.

The chapter 13 trustee filed a Motion to Dismiss and Objection to Confirmation of Plan on May 23, 2016 (D.E. 50; the "Motion to Dismiss"). In it, the chapter 13 trustee alleged that Ms. Strongs demonstrated a lack of good faith throughout the First Case by her ongoing failure to attend a meeting of creditors, file accurate schedules, and move forward with a chapter 13 plan for months. The Debtor filed a Response in Opposition to the Motion to Dismiss on June 14, 2016 (D.E. 54; the "Response in Opposition"). A hearing on the chapter 13 trustee's Motion to Dismiss and the Debtor's Response in Opposition was noticed for Fayetteville, North Carolina on July 27, 2016 at 10:00 a.m.

At 7:10 a.m. on July 27, just under three hours before the scheduled hearing, counsel for the Debtor uploaded and filed a two-line withdrawal of the Response in Opposition. The court was not advised of the withdrawal in advance, had not removed the matter from the calendar, and had not excused Ms. Strongs' attorney's attendance. The matter was called that morning in due course. Counsel for the chapter 13 trustee and counsel for Bio-Med were present and informed the court of the untimely withdrawal of the Response in Opposition, stating that they had learned of its filing while traveling to the hearing or upon arrival. The Debtor and her attorney failed to appear. Counsel for the chapter 13 trustee and counsel for Bio-Med informed the court that both had spent a large amount of time preparing for the hearing and were prepared to proceed with the case dismissal request based on bad faith filing.

By withdrawing the written objection at the proverbial eleventh hour, and then failing to appear at the hearing to provide an explanation, the Debtor and her counsel conceded the accuracy of the facts contained in the Motion to Dismiss filed by the chapter 13 trustee. The last minute

4

withdrawal and failure to appear were consistent with a pattern of behavior by the Debtor in failing to prosecute her chapter 13 First Case in good faith. The withdrawal effectively "ran up the white flag" on the issues of filing in bad faith and subsequent failure to prosecute a case in good faith.

The court accordingly entered an order granting the chapter 13 trustee's now-unopposed Motion to Dismiss on August 2, 2016 (D.E. 69; the "Dismissal Order"), finding that the Debtor's failure to attend multiple § 341 meetings of creditors and failure to list accurately vehicle transfers and the State Court Action on her SOFA demonstrated a lack of requisite good faith in the case.[1] The Dismissal Order did not state that the case was "dismissed with prejudice" or include language explicitly imposing a bar to refiling, but specifically found that the First Case constituted a "bad faith filing" and the record overwhelmingly reflects a lack of prosecution of the chapter 13 case by the Debtor.

The Second Case

Eighty-six days after the Dismissal Order was issued in the First Case, the Debtor filed a second petition for relief on October 27, 2016, this time under chapter 7 of the Bankruptcy Code (Case No. 16-05605-5-JNC; the "Second Case"). Ms. Strongs attended the first set Section 341 meeting of creditors in the Second Case on December 16, 2016 in Fayetteville, North Carolina. Following the Section 341 meeting, the chapter 7 trustee filed a First Motion to Extend Time to Object to Discharge and Dischargeability on February 8, 2017 to investigate the Debtor's assets

---

[1] The Debtor belatedly attempted to purge the inaccuracy of her filings by amending her schedules and the SOFA to reflect the existence of the State Court Action and vehicle transfers on July 18, 2016, nine days before the dismissal hearing and eight months after her case filing. It has also come to light that she actually attended the fifth scheduled § 341 meeting in the First Case on June 24, 2016, a fact not reflected in the record nor relayed to the court at the hearing on the Motion to Dismiss. In both instances, those last minute actions do not affect the court's findings and determination of bad faith filing of the First Case in the Dismissal Order. Further, the Dismissal Order was not appealed or subsequently challenged, and was entered after a duly noticed hearing conducted months ago that the Debtor and her attorney did not attend. It is a final order.

5

and liabilities more fully (D.E. 12; the "Trustee's Motion to Extend"). Bio-Med filed a First Motion to Extend Time on February 9, 2017 (D.E. 17; "Bio-Med's Motion to Extend") to obtain discovery to determine the disposition of the reimbursement checks that were the subject of the State Court Action. The Debtor objected to both the Trustee's Motion to Extend and Bio-Med's Motion to Extend (D.E. 13 and 22). The court granted both motions over the Debtor's objections on February 14, 2017 (D.E. 25 and 26).

The chapter 7 trustee filed a Motion for 2004 Examination of the Debtor on February 8, 2017, which the court granted on March 7, 2017 (D.E. 30). At the May 18, 2017 hearing, the Debtor and the chapter 7 trustee agreed the Debtor attended the 2004 Examination, but the attendance and compliance occurred in two parts as Ms. Strongs failed to produce documents at the first examination when conducted as directed in an order from this court, causing more unnecessary delay in her bankruptcy case.

## DISCUSSION

The Trustee's Motion originally sought dismissal of this chapter 7 case pursuant to 11 U.S.C. § 109(g) based on debtor eligibility (as discussed below) and alternatively pursuant to 11 U.S.C. § 707(b) for alleged abuse of the bankruptcy process. Prior to the hearing, the trustee withdrew the § 707(b) basis for dismissal. Bio-Med retained its request for dismissal under 11 U.S.C. § 707(b) and sought an extension of time to object to dischargeability and discharge of the Debtor under 11 U.S.C. §§ 523 and 727. At the hearing, the court determined that logically the first issue was whether Ms. Strongs was currently eligible to be a debtor pursuant to 11 U.S.C. § 109(g) at the time of filing of the Second Case. If she was not, the chapter 7 case must be immediately dismissed and the remaining issues would become moot.

Section 109(g) states, in relevant part:

6

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
>> (1) the case was dismissed by the court for willful failure of the Debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or . . . .

11 U.S.C. § 109(g)(1).

Courts refer to the plain language of Section 109(g) in considering whether an individual is eligible to be a debtor. *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 942 (4th Cir. 1997). Section 109(g)(1) provides that an individual is ineligible to file a subsequent petition for relief if he or she was a debtor in a previously pending case during the immediately preceding 180 days and one of two conditions is satisfied, being: (1) "willful failure . . . to abide by orders of the court" *or* (2) "willful failure . . . to appear before the court in proper prosecution of the case." 11 U.S.C. § 109(g)(1). If either of these two bases are met with regard to a previously dismissed case, the statute effectively triggers a 180-day ban on the debtor's refiling another petition for relief.

Timeliness of Objection

Section 109(g) does not establish a temporal framework as to when a court should consider an individual debtor's eligibility to file for relief—whether at the end of the first case, the start of a second case, or later in the process. Instead, courts retain flexibility in deciding eligibility, and such a determination "can be made when the bankruptcy court is later called upon to determine if § 109(g) bars a subsequent refiling." *Tomlin*, 105 F.3d at 942 (citations omitted); *see also In re Wen Hua Xu*, 386 B.R. 451 (Bankr. S.D.N.Y. 2008) (finding that "the great majority of courts . . . have held that a court may make a finding of willfulness when called upon to determine if the earlier case renders the debtor ineligible under Section 109(g) – i.e. during the second bankruptcy case.") (citations omitted).

7

As an initial matter, Ms. Strongs contends that the Trustee and Bio-Med should have immediately objected to the Second Case upon its filing and raised the issue of her eligibility at the outset. Failure to act quickly, she contends, bars relief now. However, the statute contains no instruction as to when a court is to consider Section 109(g)(1) ineligibility, and in her filings and at the hearing the Debtor did not show any prejudice that would result from imposing a non-statutory time bar upon the Trustee and Bio-Med. To the contrary, the Debtor successfully held off action by her creditors and a bankruptcy trustee for an eight-month period in addition to a similar amount of time in the First Case. As will be discussed below, Ms. Strongs has in fact *substantially benefitted* by filing the Second Case and holding off her creditors when, strictly speaking, she was not entitled to do so. Therefore, the Debtor has not shown prejudice sufficient to warrant the equitable relief of imposing a time bar on the chapter 7 trustee or Bio-Med. The court finds that Trustee Motion and Bio-Med Motion are both timely filed and may proceed.

<u>Willfulness and Failure to Prosecute</u>

The court next considers whether its prior ruling or the Debtor's conduct in the First Case invokes application of the Section 109(g)(1) 180-day bar to refiling. The term "willful" is not defined in the Bankruptcy Code. As a result, courts have fashioned various definitions and generally found it to include "conduct which is intentional, knowing, and voluntary . . . ." *In re Ellis*, 48 B.R. 178, 179 (Bankr. E.D.N.Y. 1985). Alternatively, a "willful failure . . . necessitates a showing that the person, with notice of their responsibility, intentionally disregarded it or demonstrated 'plain indifference.'" *Id*. (citations omitted). Willfulness is determined on a case-by-case basis. *See In re Nelkovski*, 46 B.R. 542, 544 (Bankr. N.D. Ill. 1985) (explaining that "the court must make case-by-case determinations premised on factual inquiry").

8

In the First Case, Ms. Strongs was on notice of her responsibility to abide by orders of the court and properly prosecute her case, yet she consistently demonstrated "plain indifference" to the chapter 13 case's progress. Ms. Strongs was derelict in her duties given, but not limited to, her ongoing failure to: (a) attend and give testimony at a § 341 meeting of creditors until nearly eight months into the case; (b) cooperate with the chapter 13 trustee's investigation and provide requested documents in a timely manner concerning the unexplained disappearance of money; (c) list or report the ownership or transfer of the Vehicles until more than eight months into the case; (d) file a confirmable chapter 13 plan in a timely fashion; (e) appear at the dismissal hearing in the First Case after filing an objection resulting in its setting and notice; and (f) timely challenge the findings contained in the nine months old Dismissal Order that she chose not to contest.[2]

Ms. Strongs' actions and failure to act as listed above and as listed in the Dismissal Order combine to constitute both a "willful" failure to obey court orders and a "willful" failure to prosecute her chapter 13 case in good faith in the First Case. Finally showing up at a fifth set creditors' meeting some seven months into a case, and belatedly correcting material omissions in her sworn chapter 13 petition schedules to list a reference to the Vehicles and State Court Action a month later, are not sufficient. Facts beyond whether a debtor physically appears determine if he or she prosecutes a bankruptcy case in good faith. A review of the case and conduct as a whole provides a better general evaluation as to whether an individual debtor complies with the many duties imposed by the Bankruptcy Code in good faith. *See In re King*, 126 B.R. 777, 778 (Bankr. N.D. Ill. 1991) (finding that the second prong of Section 109(g)(1) "would not be a meaningful tool . . . if [debtors] could thumb their noses at their duties so long as they come into court on dates

---

[2] No motion (whether by Federal Rule of Civil Procedure Rule 60 or otherwise) or appeal was filed by the Debtor in the First Case. It is a final order and Ms. Strongs is accordingly bound by its effect here. *See Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, No. 16-1681, 2017 WL 2507729 (4th Cir. June 12, 2017).

9

set"). With respect to the Dismissal Order finding bad faith on her part, Ms. Strongs and her lawyer did not appear for that hearing, but instead unnecessarily imposed costs and time on opposing counsel via a last-minute withdrawal of the opposition document.³

The Debtor next contends that because the Dismissal Order did not state that the First Case was "dismissed with prejudice," the Section 109(g) bar is not effectuated. However, no section of the Bankruptcy Code equates the term "with prejudice" equated to Section 109(g) ineligibility. Logically, a finding of "bad faith" is a stronger tie to Section 109(g) than inclusion or exclusion of the words "with prejudice." To the extent a bankruptcy court's order appears ambiguous, the bankruptcy court itself is in the best position to interpret the order and determine its rationale for dismissing a proceeding. *Tomlin*, 105 F.3d at 940. Further, courts generally do not make express findings of willfulness in orders dismissing cases. *Wen Hua Xu* 386 B.R. at 455. This court may interpret its previous order dismissing a case at a later date as containing or not containing findings of willfulness or lack of prosecution for purposes of 11 U.S.C. § 109(g).

Here, while the court's Dismissal Order did not explicitly provide that the First Case was dismissed with or without prejudice, or impose a refiling bar for a stated period of time, the Dismissal Order instead made several findings of fact and dismissed the case as a "bad faith filing." No appeal was taken and the affected parties are bound by its findings. Taken together, the factual findings contained in the Dismissal Order and the record from that case amount to a conclusion

---

³ At the hearing the Debtor attempted to introduce into evidence an email dated July 26, 2016 from the chapter 13 trustee to an attorney at the firm of counsel for the Debtor ("Exhibit J") for the purpose of collaterally attacking the bad faith filing finding contained in the Dismissal Order. While Exhibit J was authenticated without objection as a genuine document, an objection was lodged by counsel for Bio-Med and joined by the chapter 7 trustee as to the truthfulness of the factual statements contained therein made by the chapter 13 trustee, who was not present at the hearing. No exceptions to the hearsay rule under Rule 803 of the Federal Rules of Evidence were offered and the objection was sustained. Therefore, the contents of Exhibit J were excluded from consideration in proving the truthfulness of any facts stated therein, express or implied.

that the Debtor willfully failed to both abide by orders of the court and properly prosecute her First Case, thereby satisfying both prongs of 11 U.S.C. § 109(g)(1) and triggering a 180-day period of ineligibility. More specifically, the court found that the Debtor failed to attend multiple Section 341 meetings of creditors, consistently filed motions to continue on the eve of scheduled Section 341 meetings, failed to truthfully and accurately disclose relevant asset transfers on her SOFA, and failed to pursue approval of a chapter 13 plan in a timely manner.

Having received the benefit of the automatic stay for eight months in the First Case while failing to meet the obligations required by chapter 13 debtors, Ms. Strongs abandoned that case and eighty-six days later filed again. Unfortunately for her, she acted ninety-four days too soon. Her actions and lack of action taken in the First Case unnecessarily and unreasonably delayed confirmation of her chapter 13 plan, thereby allowing her to evade her obligations to her creditors.

## CONCLUSION

Based on the foregoing, Ms. Strongs was ineligible to be a chapter 7 debtor in this chapter 7 case pursuant to 11 U.S.C. § 109(g) on October 27, 2016, as she willfully failed to abide by court orders and prosecute her case properly in the First Case. As a result, a 180-day bar was immediately invoked upon the dismissal of the First Case and was in effect at the time of the filing of the Second Case. The Trustee Motion is therefore ALLOWED, and the Second Case is hereby DISMISSED. Should this case remain open upon the taking of an appeal or for other motion filed by the Debtor, the court further orders that the Bio-Med Motion is deemed ALLOWED and the time to object to the discharge of the Debtor and dischargeability of the debt asserted by Bio-Med is extended during that interim period plus thirty (30) days.

**END OF DOCUMENT**